UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DEBBIE M. WALDRON,

                              Plaintiff,

    -v.-                                    5:10-CV-0065
                                              (NPM/DEP)

JAMES MILANA; SCOTT HENDERSON;
SEAN LYNCH; THOMAS SKARDINSKI;
DETECTIVE LAMBERTON; CITY OF
SYRACUSE, NEW YORK; CARMEL J.
RIGGS; and DANIELLE RIGGS,

                              Defendants.

---

APPEARANCES:

FOR THE PLAINTIFF:

| | |
|---|---|
| THE GOLDEN LAW FIRM | B. BROOKS BENSON, ESQ. |
| 1412 Genesee Street | LAWRENCE GOLDEN, ESQ. |
| Utica, New York 13502 | |

FOR THE DEFENDANTS,
James Milana; Scott Henderson; Sean
 Lynch; Thomas Skardinski; Detective
 Lamberton; and City of Syracuse, New
 York:

| | |
|---|---|
| MARY ANNE DOHERTY, ESQ., | |
|  CITY OF SYRACUSE CORPORATION | |
|   COUNSEL | SHANNON T. O'CONNOR, ESQ. |
| 300 City Hall | |
| Syracuse, New York 13202 | |

Neal P. McCurn, Senior District Judge

## *Memorandum, Decision and Order*

## *I. Introduction*

Presently before the court in this civil rights action is a motion by defendants, James Milana, Scott Henderson, Sean Lynch, Thomas Skardinski, Detective Lamberton, and City of Syracuse, New York ("City Defendants"), for summary judgment against plaintiff, Debbie M. Waldron ("Plaintiff"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Dkt. No. 50. Plaintiff opposes the motion, and City Defendants reply. Decision is rendered is on the submitted papers, without oral argument.

## *II. Procedural Background*

Plaintiff originally commenced this action against the City Defendants, the County of Onondaga, three Onondaga County Deputy Sheriffs, Carmel J. Riggs and Danielle Riggs,[1] alleging myriad claims stemming from events surrounding Plaintiff's arrest and detention for arson and reckless endangerment on or about January 17, 2009. The County Defendants thereafter answered the complaint, while the City Defendants filed a pre-answer motion to dismiss. The County Defendants' motion for judgment on the pleadings followed. Thereafter Plaintiff, when opposing the City Defendants' motion, sought leave to amend her complaint.

The County Defendants' motion was granted in its entirety, thereby eliminating them as defendants to this action. The City Defendants' motion to

---

[1] Despite each being served with a summons and complaint, both Carmel J. Riggs and Danielle Riggs failed to appear in this matter. Consequently, upon request by Plaintiff, the Clerk of the Court entered default against them on August 29, 2011. See Dkt. No. 44.

dismiss was granted in part and denied in part, and the Plaintiff's motion to amend the complaint was granted in part and denied in part.  Plaintiff was directed to file her amended complaint in accordance with this court's December 7, 2010 Memorandum, Decision and Order ("MDO").  See Dkt. No. 30.

Plaintiff thereafter filed her amended complaint, which included the following claims against the City Defendants, consistent with this court's MDO.  First, Plaintiff alleges claims pursuant to 42 U.S.C. § 1983 against all individually named defendant City of Syracuse police officers for violations of Plaintiff's right to be free from unreasonable seizure under the Fourth Amendment; the companion New York State common law tort claim for false arrest/detention/imprisonment against those same defendants; and a vicarious liability claim under New York State common law against the City of Syracuse ("the City") for their employees' false arrest/detention/imprisonment of Plaintiff.  Also pending are § 1983 claims against the defendant City police officers for violations of Plaintiff's rights under the Fourth Amendment and the companion New York State common law tort claim for malicious prosecution against those same defendants as well as a vicarious liability claim under New York State law against the City for its employees' malicious prosecution of Plaintiff.  Plaintiff also alleges a § 1983 claim against defendants Milana, Henderson and Skardinski for failure to intervene to prevent the false arrest/detention/imprisonment and malicious prosecution of Plaintiff in violation of her rights under the Fourth Amendment.  Finally, Plaintiff alleges a New York common law tort claim for intentional infliction of emotional distress against defendant, Lynch as well as a vicarious liability claim under New York State law against the City for Lynch's intentional infliction of emotional distress of Plaintiff.

By their motion for summary judgment, City Defendants now seek

judgment in their favor dismissing all of Plaintiff's causes of action. Principally, City Defendants argue that there is no question of material fact as to the existence of probable cause for Plaintiff's arrest and prosecution, and therefore, Plaintiff's state law and § 1983 claims against them for false arrest and malicious prosecution must be dismissed. In the alternative, City Defendants argue the individually named officers are entitled to qualified immunity on these claims. Also, City Defendants argue for the first time that Plaintiff's state law claims for false arrest and intentional infliction of emotional distress are time barred.

Plaintiff counters[2] that there are factual issues regarding the existence of probable cause. Plaintiff concedes, through her attorney's affidavit, that her state law claims for false arrest and intentional infliction of emotional distress are time barred, but argues that encompassed in her first cause of action is a Fourteenth Amendment claim against Lynch for violation of her right to substantive due process.

### III.  Legal Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the initial burden to show the court why it is entitled to summary judgment. See Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir.2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986)). If the movant meets its burden, the burden

---

[2] The Court notes City Defendants' objection to Plaintiff's late filing of her papers in opposition to the pending motion for summary judgment. Plaintiff asks that the court accept her late filing for good cause. Without deciding the merits of Plaintiff's request, as it appears City Defendants have not been prejudiced by Plaintiff's late filing, the Court exercises its discretion to accept her papers in opposition and will consider them when deciding the pending motion.

shifts to the non-movant to identify evidence in the record that creates a genuine issue of material fact. See id., at 273 (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986)).

When deciding whether a material issue of fact is in dispute, the court is cognizant that "[a] fact is material when it might affect the outcome of the suit under governing law." Tracy v. Freshwater, 623 F.3d 90, 95 (2d Cir.2010) (internal citation omitted). Also, a material fact is genuinely in dispute "if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Bessemer Trust Co., N.A. v. Branin, 618 F.3d 76, 85 (2d Cir.2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)).

"In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible or usable at trial." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir.2008) (internal quotation and citation omitted). Finally, when the court is deciding a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir.2004) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598 (1970)).

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute. See Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir.2002) (citations omitted). For this reason, the Court may enforce Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to

have been admitted where the nonmoving party has failed to properly respond to that statement. See N.D.N.Y. R. 7.1(a)(3). See also Figueroa v. Tri-City Highway Prods., Inc., No. 08-CV-868, 2010 WL 3635247, at *2 (N.D.N.Y. Sept.10, 2010) (citations omitted). Pursuant to Local Rule 7.1(a)(3), the nonmoving party must file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L.R. 7.1(a)(3).[3]

## IV. Factual Background

The following facts are disputed unless otherwise noted.

At approximately 6:10 p.m. on January 17, 2009, a fire broke out at 203 Rowland Street in the City of Syracuse, New York. Multiple police officers, including City police as well as Onondaga County deputy sheriffs, responded to the scene as a result of 911 dispatch calls.

Defendant Milana responded to 203 Rowland Street at approximately 6:26 p.m. See Ex. E to City Defs.' Statement of Material Facts ("SOMF"), Dkt. No. 53-12, at 1.[4] At that time, he observed that fire department personnel were already at the scene and that the house was engulfed in flames. Milana then spoke with two eyewitnesses, defendants Carmel and Danielle Riggs, both of whom resided at 201

---

[3]   Local Rule 7.1(a)(3) also provides that "[t]he non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs."

[4]   The court notes, for future reference only, that the proper way to introduce evidence into the record on a motion for summary judgment is by way of affidavit or declaration, not by reference to exhibits in the Statement of Material Facts. See, e.g., S.E.C. v. Boock, No. 09-CV-8261, 2011 WL 3792819, at *9 (S.D.N.Y. Aug. 25, 2011) (citing Presbyterian Church Of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009)).

Rowland Street. According to Milana's report, Carmel Riggs stated that at approximately 5:55 p.m., she saw a male, whom she knew to be the son of the owner of the house at 203 Rowland Street, break into the house. Carmel added that the male was in the residence for a brief period of time, after which he left in a dark colored Jeep SUV. Carmel also stated that the male was in the company of a female, whom she knew to be the daughter of the owner. See Ex. B-1to SOMF. In her written statement, provided to defendant Skardinski on the evening of January 19, 2009, Carmel stated that there was a girl with the owner's son, whom she identified as "possibl[y] one of the granddaughters of" the owner. Carmel reiterated that there was a dark colored Jeep parked in front of the house, but added that she knew it to belong to the owner's daughter. Carmel also referred to the male, who was the owner's son, as "Junior." See Ex. C-1 to SOMF. According to Milana's report, Carmel's daughter, Danielle, reported that she saw the same male leave 203 Rowland Street around 6:00 p.m. in a dark colored Jeep SUV. Danielle added that she saw five people enter the Jeep, four males and one female, and that the female was the owner's daughter. See Ex. B-1 to SOMF.

Thereafter, Milana drove Danielle Riggs to the Criminal Investigation Division Office at the Syracuse Police Department ("CID") for her to give a statement. Milana did not go to the scene of the traffic stop and had no contact with Plaintiff on January 19, 2009.[5]

Defendant Henderson also responded to the scene. When he arrived, the fire was fast moving and extremely well involved. Henderson's role in the arson

---

[5] The court notes that while Plaintiff denies that Milana had no contact with her on January 17, 2009, she fails to cite to any evidence in the record supporting her denial. Accordingly, this statement of material fact is deemed admitted pursuant to Local Rule 7.1(a)(3). The court further notes that Plaintiff's memorandum of law and attorney's affidavit are silent in this regard as well.

7

investigation was limited to scene security at 203 Rowland Street and writing the main report for the investigation. Henderson did not transport Plaintiff to CID, nor did he go to the scene of the traffic stop. When Henderson did report to CID on the evening of January 17, 2009, he could smell a pungent odor of gasoline.

Defendant Lynch was at CID when he heard the dispatch call of a fire and responded to the scene at 203 Rowland Street. Lynch took over questioning Carmel Riggs and then transported her to CID.

Meanwhile, Onondaga Sheriff's Deputies, T. Shields and Terrence Fischer, went to 207 East Warrington Road in Syracuse, which was the last known address for "Junior." Upon arrival, the deputies observed a dark colored Jeep in the driveway. Three people exited the house and entered the Jeep, leaving 207 East Warrington Road. The deputies followed the Jeep, and at approximately 7:10 p.m., conducted a traffic stop. The three persons in the Jeep were identified as Plaintiff, Anthony Waldron, and Francis Waldron.[6]

While en route to CID with Carmel Riggs, Lynch received a dispatch call that Deputies Shields and Fischer had conducted a traffic stop of Plaintiff's Jeep. Lynch went to the traffic stop with Carmel, where she identified the Jeep and Anthony Waldron as being at the scene of the fire.[7]

Defendant Skardinski never left CID on January 17, 2009 to go to the scene

---

[6] Plaintiff's brother, Francis Waldron, is also known as Junior.

[7] Plaintiff responds to this statement as follows, without any citation to the record: "Plaintiff admits Riggs wrongly and falsely identified the [J]eep, denies that the [J]eep was at Rowland [S]treet just prior to the fire as alleged by the Riggs[es], admits she wrongly identified Anthony, and denies that Anthony was at Rowland Street shortly before the fire." Pl.'s Resp. to Defs.' SOMF, ¶ 14, Dkt. No. 55-3. As this is not a proper response to City Defendants' statement, nor does it contain a specific citation to the record where a factual issue may be found, the court deems this statement of fact admitted.

of the fire at 203 Rowland Street. Skardinski was assigned to, and did, take the statement of Carmel Riggs at CID that evening. Skardinski later signed Plaintiff's arrest report at 11:30 p.m. Skardinski testified that the probable cause determination was based on (1) Carmel's identification of Anthony and the Jeep during the traffic stop, (2) the fire department's determination at 203 Rowland Street that some accelerant started the fire; and (3) test results indicating accelerants on all three suspects. See Dep. of Thomas Skardinski, Nov. 21, 2011, at 42-43, Dkt. No. 50-19.

Defendant Lamberton also never left CID on January 17, 2009 to go to the scene of the fire at 203 Rowland Street. Lamberton's involvement in the arson investigation that evening was to interview Danielle Riggs. He conducted a photo array procedure with Danielle, during which she identified Anthony Waldron, Francis Waldron and Maurice Waldron as being present at 203 Rowland Street at 5:45 p.m. that evening. Danielle's statement to Lamberton indicates that at approximately 4:30 p.m. that evening, she "saw one of the Waldr[o]n girls park her Jeep in front of their residence" and that the Jeep was still parked there around 5:45 p.m. Ex. C-2 to SOMF.[8]

According to a fire investigation report submitted by Lieutenant Tony Morgan, a fire investigator for the City of Syracuse Fire Department, Lt. Morgan

---

[8] Plaintiff denies this statement, again without citation to the record. Plaintiff correctly points out that Danielle's statement to Lamberton does not indicate that "she knew the Jeep" belonged to one of the daughters of the owner of 203 Rowland Street as is presented by City Defendants' Statement of Material Fact, Paragraph 20. The court, accordingly, included the exact language from Danielle's statement. Plaintiff goes on to dispute the truth of Danielle's statement, referring, without specific citation, to Danielle's deposition wherein she allegedly "backed away" from her statement to Lamberton. Whether, in fact, Danielle later "backed away" from the statement she gave to police on January 17, 2009 is not material to the issues presented by the pending motion for summary judgment, and therefore need not be considered.

was "requested by CID detectives to process the clothing of three suspects that were being detained for questioning" regarding the fire at 203 Rowland Street. See Ex. D to SOMF. Morgan reports receiving a "positive reading from a [G]race hydrocarbon detector" on the suspects' clothing, as well as under each suspects' fingernails. See id. Another fire investigator for the Syracuse Fire Department, Kenneth Heffernan, testified that he took readings of the clothing of the three suspects with a Grace hydrocarbon detector and that he received a positive reading on each item. See Dep. of Kenneth Heffernan, May 16, 2012, at 6, 12, Dkt. No. 50-21.[9] Plaintiff denies, again without any citation to the record, that a positive reading was received from her clothing. The Court's review of Plaintiff's attorney's affidavit reveals his assertion that only her socks and sneakers received a positive reading at CID on the evening of January 17, 2009, not her "clothing" and therefore, according to Plaintiff's counsel, "it stands to reason that there was no positive reading obtained on any of the clothing of [Plaintiff] when Heffernan tested the items that night!" See Aff. of B. Brooks Benson ("Benson Aff."), Aug. 27, 2012, ¶¶ 38-39, Dkt. No. 56. The court will therefore only deem admitted the statement that a positive reading was received on Plaintiff's socks and sneakers at CID on the evening of January 17, 2009.

At 11:30 p.m. on January 17, 2009, Skardinski arrested Plaintiff for third degree arson and first degree reckless endangerment. Lamberton thereafter filed the felony complaint against Plaintiff in Criminal Court for the City of Syracuse.

Plaintiff had no contact with any of the individually named City Defendants prior to January 17, 2009, and has had no contact with them since that day.

---

[9]  Heffernan also explained that a Grace hydrocarbon detector is an instrument, manufactured by Grace Industries, that is used to identify the potential presence of an ignitable liquid. See Dep. of Kenneth Heffernan, May 16, 2012, at 9, Dkt. No. 50-21.

On July 13, 2009, the charges against Plaintiff were dismissed due to lack of evidence, without opposition by the Onondaga County District Attorney's Office.

Plaintiff filed a notice of claim with the City of Syracuse on October 13, 2009.

## *V. Discussion*

Initially, the court notes, and the parties agree, that Plaintiff's New York common law claims for false arrest, detention and imprisonment and intentional infliction of emotional distress are time-barred, as Plaintiff filed her notice of claim more than ninety days after these claims arose. See N.Y. GEN. MUN. LAW §§ 50-e, 50-i (McKinney's 2010). Accordingly, the City Defendants' motion for summary judgment regarding those claims is granted.

Also, the court is constrained to acknowledge Plaintiff's specious argument that the facts underlying her intentional infliction of emotional distress claim against defendant Lynch equally support a § 1983 claim against him for the violation of her right to substantive due process under the Fourteenth Amendment, which is somehow encompassed in her "first federal law cause of action." Aff. of B. Brooks Benson, Aug. 27, 2012, ¶ 48, Dkt. No. 56. Nowhere in Plaintiff's amended complaint, however, does she allege such a claim. In fact, the words, "due process" do not appear, even once, in her pleading. Moreover, as Plaintiff's counsel is well aware, this court clearly identified the claims that were left to be adjudicated after deciding the pre-discovery motions in this case. See Dkt. No. 30. Absent from this court's MDO regarding those motions is any mention of a substantive due process claim. Because Plaintiff's argument that such a claim exists is unsupported, the court will not address the issue further.

11

### ***B. False Arrest/Detention/Imprisonment***

A claim for false arrest, detention or imprisonment is evaluated pursuant to the Fourth Amendment right to be free from unreasonable searches and seizures. See Smith v. City of New York, 388 F. Supp. 2d 179, 184 (S.D.N.Y. 2005) (citing Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992)). The elements of such a claim are that "(1) the defendant intentionally confined the plaintiff; (2) the plaintiff was aware of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." Id. (citing Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest[.]" Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal citation and quotation omitted). "Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." United States v. Valentine, 539 F.3d 88, 93 (2d Cir. 2008).

Here, there is no dispute as to the first three elements of Plaintiff's Fourth Amendment claim for false arrest. What is disputed is the fourth element, whether Plaintiff's confinement was otherwise privileged. City Defendants argue that there was probable cause to arrest Plaintiff, and therefore, they are entitled to summary judgment on this claim. Plaintiff counters that there are questions of fact for a jury to decide regarding whether the defendant officers were aware of exculpatory evidence that would have negated probable cause, and therefore, the City Defendants' motion for summary judgment on Plaintiff's false arrest claim should be denied.

12

Plaintiff was arrested for third degree arson and first degree reckless endangerment. Under New York Penal Law, "[a] person is guilty of arson in the third degree when [s]he intentionally damages a building or motor vehicle by starting a fire or causing an explosion[,]" N.Y. PENAL LAW § 150.10 (McKinney 2012), and "[a] person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person[,]" N.Y. PENAL LAW § 120.25 (McKinney 2012).

Under New York law, an arrest without a warrant is presumptively unlawful. See Curry v. City of Syracuse, 316 F.3d 324, 335 (2d Cir. 2003). Thus, a defendant to a claim of false arrest where, as here, the arrest was made without a warrant, has the burden of proving compliance with New York Criminal Procedure Law § 140.10 (McKinney 2010), which requires "reasonable cause," the equivalent of probable cause. Raysor v. Port Authority of New York and New Jersey, 768 F.2d 34, 40 (2d Cir. 1985). Pursuant to § 140.10, a person may be arrested for a crime without a warrant where a police officer "has reasonable cause to believe such person has committed such crime, whether in his presence or otherwise[,]" N.Y. CRIM. PROC. LAW § 140.10(1)(b) (McKinney 2010). Under New York law, "reasonable cause" is defined as follows:

> Reasonable cause to believe that a person has committed an offense exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it. Except as otherwise provided . . ., such apparently reliable evidence may include or consist of hearsay.

13

N.Y. CRIM. PROC. LAW § 70.10(2).

Whether probable cause existed may be determined as a matter of law where "there is no dispute as to the pertinent events and the knowledge of the officers." See Weyant, 101 F.3d at 852. "[C]ourts must consider those facts available to the officer at the time of the arrest and immediately before it." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (quoting Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002)). "[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." Id. While the Court of Appeals for the Second Circuit has observed that "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest[,]" Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) (quoting Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997)), at the same time, the officer "may not disregard plainly exculpatory evidence[,]" Panetta, 460 F.3d at 395. Exculpatory evidence is evidence that eliminates culpability. See Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003). The existence of exculpatory evidence should thus negate probable cause. See id. However, probable cause may still exist where police do not know the validity of an exculpatory defense. See id.

It is true that "information provided by an 'identified bystander with no apparent motive to falsify' has 'a peculiar likelihood of accuracy[,]'" Panetta, 460 F.3d at 395 (quoting Caldarola, 298 F.3d at 163), and thus supports a finding of probable cause. However, if "the circumstances raise doubt as to the person's veracity," any such information gleaned from the witness may not form the basis

14

of a probable cause determination.  See Curley, 268 F.3d at 70 (citing Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995)).  But even doubts about a witness's veracity will not completely derail the presence of probable cause.  See Jocks, 316 F.3d at 138 (false information will not dissipate probable cause); Curley, 268 F.3d at 70 (does not matter if the investigation casts doubt on the basis of arrest).

  This court previously denied the City Defendants' motion to dismiss Plaintiff's false arrest claim, noting that in her amended complaint, Plaintiff alleged sufficient facts that, if proved true, could establish a lack of probable cause for her arrest based on the existence of exculpatory evidence.  Specifically, Plaintiff alleged that the defendant officers were aware that (1) she had in her possession a store receipt that would prove she was in Green Hills Farm market at the time the fire broke out; (2) there was a security video that would show that she was in Green Hills Farm market at the time the fire broke out; and (3) Plaintiff had prior problems with one of the eyewitnesses, Carmel Riggs, which resulted in assault charges being filed against Carmel by Plaintiff, thereby providing Carmel with a motive to falsely identify Plaintiff.  The court therefore concluded that Plaintiff adequately pled a lack of probable cause, considering the totality of the evidence allegedly before the City officers at the time of her arrest.  See Dkt. No. 30.

  Now, in opposing the City Defendants' motion for summary judgment, Plaintiff produces evidence, in the form of her testimony, that the City Defendants knew of the existence of the store receipt and store video, and that they knew that Plaintiff and Carmel Riggs had problems in the past, which resulted in Carmel being charged with assault.  Plaintiff essentially argues that the store receipt and

video prove that she could not have been at the scene of the fire when it broke out, and that the previous assault against her by Carmel is evidence of the Riggses' motivation to lie, which renders their statements to the police totally unreliable, thus eliminating her culpability and consequently, eliminating probable cause for her arrest.

However, the evidence, even viewed in a light most favorable to Plaintiff, belies her characterization of it as exculpatory. First, the store receipt and video would tend to prove only that Plaintiff was in Green Hills Farm market on January 17, 2009 at approximately 6:00 p.m. The store receipt reflects that someone, assumed to be Plaintiff, checked out her groceries at Green Hills Farm market at 6:01:54 p.m. on January 17, 2009, and the video reflects that Plaintiff was at the checkout area on that date between 6:02:40 p.m. and 6:05:37 p.m. While Plaintiff alleges she was there for at least an hour prior to checking out, "the arresting officer does not have to prove plaintiff . . . wrong before arresting [her]." Curley, 268 F.3d at 70 (citing Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989). "Nor does it matter that an investigation might have cast doubt upon the basis for the arrest." Curley, 268 F.3d at 70 (citing Krause, 887 F.2d at 371). Moreover, the officers had evidence, albeit in the form of the allegedly questionable eyewitness testimony, that Plaintiff, and her vehicle, were at the scene of the fire at 5:45 p.m., shortly before it erupted. Consequently, even if the officers considered the store receipt and video, the other evidence before them at the time, which would support a conclusion that Plaintiff was at the scene of the fire at 5:45 p.m., was not inconsistent with Plaintiff being present at Green Hills Farm market, approximately five miles away, at approximately 6:00 p.m. that same evening.

Regarding the veracity of the eyewitnesses, Carmel and Danielle Riggs,

Plaintiff's own testimony is that an altercation occurred between Plaintiff and Carmel Riggs, not Danielle Riggs, that the altercation occurred eight years prior to the events underlying this case, and that as a result, both Plaintiff and Carmel were charged with assault, not just Carmel. Accordingly, even assuming the fact of the altercation and resulting assault charge would provide Carmel with motivation to misidentify Plaintiff's vehicle, and would provide Danielle with motivation to misidentify Plaintiff and her vehicle, "motivation is not a consideration in assessing probable cause." Singer, 63 F.3d at 119 (citing Mozzochi v. Borden, 959 F.2d 1174, 1179-1180 (2d Cir.1992)) (noting that even where circumstances of an arrest raised questions regarding the motivation of the arresting officer and the witnesses, probable cause still existed to arrest the plaintiff).

 Here, to be sure, the evidence linking Plaintiff to the scene initially consisted of the Riggses' statements. Danielle Riggs reported that someone matching Plaintiff's description left the scene of the fire at 203 Rowland Street in a vehicle matching the description of Plaintiff's vehicle, at around 5:45 p.m., shortly before the fire erupted. Danielle Riggs also stated that someone matching Plaintiff's description was at 203 Rowland Street at 4:30 p.m. that evening, and a second eyewitness, Carmel Riggs, identified Plaintiff's Jeep as the Jeep that was present at 203 Rowland Street. However, it is important to note that, in addition to the eyewitness statements linking Plaintiff and her vehicle to the scene of the crime, the evidence also reflects that the City fire department received a positive reading for the potential presence of an ignitable liquid from Plaintiff's shoes and socks and from underneath her fingernails. To be sure, Plaintiff argues that she may have gotten gas on her shoes in myriad innocent ways. However, as the Second Circuit has made clear, "the fact that an innocent explanation may be

17

consistent with the facts alleged ... does not negate probable cause ... and an officer's failure to investigate an arrestee's protestation of innocence generally does not vitiate probable cause." Panetta, 460 F.3d at 396 (quoting United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985) and citing Curley, 268 F.3d at 70).

Police officers are not required to look at each piece of evidence in a vacuum. Instead, they must assess the collection of evidence as a whole to determine whether it appears likely that a crime was committed and that the person suspected of committing that crime did commit it. See N.Y. Crim. Proc. Law § 70.10(2). Here, the officers were presented with eyewitness testimony that would place Plaintiff at the scene of the crime, notwithstanding Plaintiff's evidence that she was approximately five miles away from the scene fifteen minutes later. While officers had information that may have created a question as to the motivation of the eyewitnesses in providing their statements, that information cast just as much doubt on Plaintiff's veracity, and nonetheless, motivation is not a proper consideration for the court is assessing probable cause. See Singer, 63 F.3d at 119. Finally, the officers had evidence from the fire department's investigators that the potential of an ignitable liquid was detected underneath Plaintiff's fingernails and on her shoes and socks. Here, there is no dispute as to the relevant events and the officers' knowledge before making an arrest. Considering the whole of the officers' knowledge, they had probable cause to arrest Plaintiff as a matter of law.

Accordingly, City Defendants' motion for summary judgment is granted as to Plaintiff's Fourth Amendment claim for false arrest.

### *C. Malicious Prosecution*

City Defendants also seek summary judgment in their favor on Plaintiff's

malicious prosecution claim against them.

The elements of a claim for malicious prosecution, whether brought under § 1983 or New York common law, are as follows: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010).

City Defendants argue that they had probable cause to commence the criminal proceeding against Plaintiff and that consequently, there was no actual malice associated with same. Therefore, City Defendants argue, they are entitled to summary judgment on Plaintiff's malicious prosecution claim. Plaintiff counters that even where an officer had probable cause to make an arrest, the officer will be liable where he later discovers exculpatory evidence prior to the formal charge by the prosecutor or grand jury. Plaintiff's argument regarding exculpatory evidence mirrors that which she made in opposition to summary judgment regarding her false arrest claim. As the court has already considered, and disposed of, those arguments, Plaintiff's opposition to summary judgment on her malicious prosecution claim must fail as well. Accordingly, City Defendants' motion for summary judgment is granted as to Plaintiff's claim of malicious prosecution.

Because Plaintiff's final claim of failure to intervene against defendants Milana, Henderson and Skardinski is dependent on the success of either her false arrest or malicious prosecution claim, it too fails. Accordingly, City Defendants' motion for summary judgment against Plaintiff is granted, dismissing the entire action against them. For this reason, the court need not consider the parties'

arguments regarding the City Defendants' affirmative defense of qualified immunity.

## *VI. Conclusion*

In accordance with the foregoing discussion, it is hereby

ORDERED that the motion for summary judgment by defendants, James Milana, Scott Henderson, Sean Lynch, Thomas Skardinski, Detective Lamberton, and City of Syracuse, New York against Plaintiff, Debbie M. Waldron, see Dkt. No. 50, is GRANTED in its entirety, and it is further

ORDERED that the Clerk of the Court shall terminate the following as defendants to this action:  James Milana, Scott Henderson, Sean Lynch, Thomas Skardinski, Detective Lamberton, and City of Syracuse.

IT IS SO ORDERED.

DATED:   September 10, 2012
             Syracuse, New York

_____
Neal P. McCurn
Senior  U.S. District Judge

20